Our first case of the day is 23 1182 Doe v. Charlotte Mecklenburg Board of Education. Ms. Dunn, we're happy to hear from you. May it please the court. Laura Dunn for Plaintiff Appellant Jane Doe. Over nine years ago, on November 3rd, 2015, Ms. Doe was abducted into the surrounding woods of Myers Park High School campus in Charlotte, North Carolina by a male student who then subsequently forcibly orally raped the minor, leaving her with disheveled hair, broken glasses, muddy clothes, and semen covering her clothing. In the aftermath, two campus officials, School Resource Officer Bradley Leak and Assistant Principal Perkins, obstructed Ms. Doe's efforts to receive justice for these heinous crimes. Ms. Doe is here today challenging three categories of district court decisions in this case. The first category is the erroneous grant of summary judgment to Leak and Perkins, despite their efforts to successfully obstruct four different investigations into this incident. The second is the denial of two motions in limine, affecting her ability to prove her claims at trial. The first denying admission of Leak's internal affairs showing that the City of Charlotte intentionally assigned him to serve as a school resource officer because of his unfitness. The second, denying her an adverse inference for the destruction of video evidence allegedly showing the kidnapping itself. And third, erroneously granting limited sanctions for two motions of sanctions rather than all harm in motions filed caused because of Rule 37-2-B-C clearly required the district court to grant all costs and fees related to the violations of three court orders and not merely the two motions for sanctions, which would have been the proper remedy under Rule 37-A. Rule 37-A is for... Is your argument that that's what the court... I understood your argument to be that you thought the court did that. I don't read the court's order that way. I read it in the narrower way, just sort of naturally. Can you tell me why I should read it different or make... I can't tell whether you're making the argument that we should read it to include things that it probably doesn't naturally suggest or that it was an error to have, you know, only granted the narrower relief and why that would be beyond his discretion? I appreciate the question. The magistrate had issued two different forms of sanctions. One was the strike of the motion for summary judgment, which the district court did not receive, and then the two motions for sanctions. And so that was the recommendation from the court. However, the findings had showed that the violations of the three court orders were more extensive than the two motions for sanctions. So specifically, the magistrate had made the finding that at least seven different filings from Jane Doe had occurred because of the those seven filings were the original summary judgment opposition, which did not have the information entitled from discovery. The next was in December, I'm sorry, and that was in December 2020. The next was the Rule 56 motion, reopening discovery in August 2021. Because of the discovery misconduct, the next two were motions to compel filed in December 2021. Help me, I just want to make sure I'm not, I just want to make sure I understand the framing of the argument here. Your argument is the magistrate judge's order included all seven of these motions and not the two, as a natural way of reading the magistrate judge's order? I agree that the magistrate order is confusing. For the findings, the magistrate had enlisted all these motions I was listing out to the court and then said for these motions she is entitled to attorney's fees and costs. However, I believe the confusion has been created by the recommendation on the next page, which doesn't match the findings and instead only orders two motions for sanctions regarding attorney's fees and costs. That should not have been a recommendation at all. Attorney's fees and costs awards are non-dispositive matters left to the magistrate. I believe the reason... But within the magistrate judge's discretion, right? I mean, maybe, I mean, it's hard for us to put ourselves in the mind of the magistrate judge, but the magistrate judge is often sort of balancing sort of equities when sort of imposing these types of sanctions, and so it's a little hard for me to figure out exactly why the magistrate judge did exactly what it did, but we give a fair degree of discretion on the degree of sanctions, no? I agree, but that is not appropriate under Rule 37.2bc. So when the district court reviewed the magistrate and decided against the granting of the motion for summary judgment to be struck, because that is a dispositive matter worthy of review, the remaining provision of 37.2bc required all costs and attorney's fees. It was a mandate. There was no discretion left to this court. In fact, it was a clear error for the district court to have limited the sanctions to two motions for sanctions. That is not the proper remedy. It is for all harm caused by the violation. To move on to Part 1 of the summary judgment, Ms. Doe understands that there's obviously several state and federal law claims here, so she would like to focus first and foremost on the state law claim of obstruction of justice. In this matter, there are the definition of obstruction of justice, because it's a common law claim in North Carolina, is any action intentionally undertaken by the defendants for the purpose of obstructing, impeding, or hindering the plaintiff's ability to seek and obtain a legal remedy. We've outlined for the court four different legal investigations that occurred in this took efforts to obstruct Ms. Doe's ability to receive justice. The first was at the campus level in the investigation. Perkins, in an email to the school one day after the incident, said, quote, all the evidence is pointing consensual, unquote. This is assuredly false. At that time, Assistant Principal Perkins had text messages showing that QW had repeatedly sexually harassed Ms. Doe to skip with him for a sexual encounter, both the day before and the day of the incident, over and over. He also received a text message from Ms. Doe. Is that a, I mean, you say it's false, and it may well be wrong, but the question is whether it's, like, intentionally made for the purpose. I mean, he's drawing a judgment. Certainly, with some hindsight, we might question that judgment, but we often, like, have some hesitation, I would think, in the context of an officer, or in this case, a principal, looking at the evidence and drawing a conclusion or a preliminary conclusion about what occurred with respect to consent in this type of a scenario. And he looks at the evidence and sort of, you know, comes out what maybe in hindsight we recognize as being wrong, but it seems really hard to say that he was doing that intentionally for the purpose of, as the, as that requires here, as opposed to, like, maybe he made a wrong judgment. But we certainly don't consider that to be obstruction of justice. Every time an officer thinks there's probable cause for something, and it turns out that that's wrong. So, in this case, it's a little different. We have Assistant Principal Perkins directly telling law enforcement several things that do point to it being non-consensual that he then withholds from the Board of Education. You started with this, I mean, I, we, okay, so totally get, we can turn to those other statements, right? I was just taking the one that you started with. And we can start, right? And so the one you start with is, like, the conclusion. He's like, I've looked at this and the evidence points toward this being consensual. You know, that's a sort of judgment call that a principal's making. It's a little hard for me to see why that's obstruction on its own. I understand we got other arguments, but you started with it, and so I'm just curious why we ought to look at that sort of conclusion by a principal that he thought the evidence pointed toward consent as being, you know, intentionally, you know, misleading for the purpose of denying relief, as opposed to, like, a reasonable judgment. Understandable, Your Honor. I suppose the reason I took such critical issue with the Assistant Principal's words is he says all the evidence. He had possessed evidence that did not, in fact, show as consensual. He is the one that pulled the into the woods. To claim that a person being forced against their will into the woods is consensual, it contradicts common sense. He is also the one that received the text from Ms. Doe saying she was attacked, and if she had an STD, she wanted to kill herself. For him to say an attack is somehow consensual is just dishonest. Well, he, she certainly claimed it was an attack in one text. She did not end a conversation with Lee. She would not say it was an attack. There seemed to be, at that point in time, not saying today, right, but at that point in time, which is what we have to look at, not the benefit of hindsight, there seemed some ambiguity as to whether that characterization was accurate or not, right? I mean, that was the debate, and he's making a judgment about it, and we might not like the judgment he was making, but it seems like a hard line to suggest that that's intentionally misleading for the purpose of I think it would be erroneous under this fax to suggest that there was like some misunderstanding at the initial point. The whole reason that Assistant Principal Perkins found out that this incident even happened was because Officer Lee called him into the office, and both J.D., a fellow student, and Mr. Doe had reported that Ms. Doe had been forced off campus by a fellow student who was missing from campus. So right away, he had information that this was a kidnapping. That's the same information he gave to the principal of the school before leaving campus to physically search for her. So from square one, he actually understood this to be a very serious incident regarding a student being forced off campus. It was only during the investigation, where he only interviewed the male student and did not actually interview the female student, that he was claiming all the evidences pointing consensual by himself, concealing evidence he possessed at that time that he sent the communication to the board alleging this. We don't have the date, unfortunately, of his report to the board, but one of the other statements he made is that Ms. Doe's clothing is not dirty and her hair is not out of place. However, we have testimony from Ms. Doe, Mr. Doe, and Mrs. Doe, both her parents, that she was in fact disheveled, had broken glasses. Even the board later admitted, when being investigated by the U.S. Department of Education, that her clothes were in fact muddy. And yet he made this false representation to the board, intentionally creating a scenario where all the facts did look as if they were consensual by intentionally excluding those facts. Regarding the state law claim of obstruction of justice, while those are acts that would hinder legal justice, we obviously also have federal claims, both 1983 claims under Title IX, as well as the Equal Protection Clause. For Title IX, there has been guidance for quite some time that officials cannot show deliberate indifference to student on existence since the 1990s. Regarding the 1983 claim, defendants have raised Feminist Majority Foundation v. Hurley to allege that the standard of deliberate indifference towards student sexual misconduct had not been established until 2018. However, this is a different case than the Hurley case. In Hurley, the president of that school merely sat back and did nothing while sexual harassment continued. This is a different scenario, more akin to North Carolina, where school officials actively discriminated against Ms. Doe by hiding information, destroying evidence, and misleading officials who were conducting criminal investigations and campus investigations into this. One of the most egregious acts of, I'm sorry, one of the most egregious acts of misrepresentation was made actually by Officer Leak during an internal affairs investigation by the Charlotte Mecklenburg Police Department. During that interview, he said her clothing looked perfect. There was no sign that she had been a victim. And yet, at the exact same moment he provided that testimony, the rape kit that was being held by the hospital showed that she had a sweater covered with QW semen. To say that she looked perfect, again, is a clear misrepresentation of fact in this matter. And again, should have prevented summary judgment. So just to understand that issue, he's repeatedly said that he included in the first report and repeatedly said that there was semen on her shirt. Why would we read the statement that her clothes look perfect to like exclude that? I mean, when I, when you look at the picture, and I know that's not sort of useful, it's not like immediately obvious that that's what it is. I'm, you know, and so why would we read that statement that her clothes look perfect to like exclude what he sort of said, I believe in the Internal Affairs hearing and throughout, that there was semen on the sweater, right? I mean, I took that statement, I understand you want to say that meant that there was no semen on the sweater, but I took that statement to be more generally that she wasn't, her clothes weren't disheveled, except for the one thing that we've repeatedly talked about, which is she had semen on her sweater. Well, if that was in fact the case, Your Honor, then his answer to the Internal Affairs officer who asked about her appearance would have been actually she had semen on her sweater. That is not what he said. He said she looked perfect, there was no signs of any evidence that she had been a victim at all, which is a very different statement. What his report actually says is merely that she reported spitting out the DNA. It does not actually say he witnessed it. In fact, we had to depose him to even get him to admit that a stain was likely on her there, even though it was shown in the rape kit. In addition, Officer Leek and Assistant Principal Perkins obstructed. Okay, just just so I understand what, I mean, he talks about it for like a paragraph in his report where he describes that. I mean, I guess I'm just having a hard time understanding why that's like an omission, right? I mean, he talks about it here, he otherwise talks about it in the Internal Affairs hearing, and then he has this one question that you sort of pull out of, in my view, sort of out of context to say, oh, she was perfect, as if he was disputing what he said before. I'm having a hard time. Help me understand that. Well, what I would say, Your Honors, and probably the simplest way to answer your question is, because this is a motion for summary judgment, obviously the facts are disputed. You are viewing it one way, we have argued it a different way, and regardless, the district court should not have granted summary judgment given this legal dispute. It is not possible for the court to have decided that qualified immunity applies in this matter when we've put forward direct evidence of contradictory information, information that the officials had and yet did not put forward during legal investigations with the effect of actually, in fact, denying Ms. Doe justice. The end of that Internal Affairs history, I'm sorry, the end of that Internal Affairs hearing clearly says that they believe Ms. Doe lied and made up the kidnapping and made up the rape, which is exactly the opposite of what the jury found in this case. The jury found very clearly that this incident happened and was, in fact, moved by testimony in the court regarding Ms. Doe having injuries to her throat because her hair had been physically grabbed to forcibly, orally rape her. So she was, in fact, disheveled. There was evidence, prevalent evidence, of her being a victim of a crime. I only have one minute left, so I want to quickly turn to part two of the arguments. Both motion liminees that we have cited on appeal were denied basically without any reasoning. It makes it very challenging for this court to determine if there is an abuse of discretion because literally there is no reasoning. We do not know the judicial factors that were considered. We do not know the reasoning of the court, what facts they thought were relevant or not relevant, how they weighed them. This is a particular issue for the adverse inference. The court ruled with a single word, denied. They did not allow us to bring forward evidence that the video showing the kidnapping itself had been occurred to give us an adverse inference at trial. Did Ms. Doe admit that Lake could not have seen the other student taking her wrist? In her testimony, she first says, I don't know, because she explained she's being grabbed and is, I'm sorry, that she is being grabbed and is being required to go into the woods. She admits that she does not know and was not looking at Officer Lake and that's why the video is so important because she doesn't have that. But if we had that testimony, that would prove several claims. The negligent employment, the deliberate indifference, and of course all the claims personally against Lake. I see that I have gone over time. I reserve the remainder for rebuttal. Thank you. Counsel, we're happy to hear from you. Good morning and may it please the court. Steven Bader from Cranfield, Sumner, and Raleigh here for the Appelese. I'm joined by my colleagues and co-counsel on this matter, Terry Wallace and Laura Keaton. Your Honors, Jane Doe's arguments in this appeal as to summary judgment, as to the discretionary rulings, and as to the unsupported by case law. Some of the arguments that she makes, she cites legal authorities that don't apply. In other instances, she's raising arguments for the first time on appeal. But nowhere has she identified an error that warrants reversal and this court should affirm in all respects. Why don't you start? So she began with the sort of statement by Perkins that all the evidence points to it. Why is that not, you know, she says false and then, you know, obviously sort of intentionally made for the purpose of obstruction. Walk us through that example. Yes, Your Honor. Well, I think you start with the definition of the state law tort. An intentional act done to interfere with or obstruct her ability to seek and obtain a legal remedy. And so it's not just, as Your Honor pointed out, looking at certain things out of context. It's looking at the entire record. And in particular with Perkins, what we have is he did not speak with Jane Doe after this incident at all. He's back in his office speaking with QW. He does have a brief conversation with Jane Doe's mother where she makes a comment that this is not the way you treat a rape victim. And then in his initial report, he writes, or he describes her as a victim, later documents the file so that when this is reported to Central Learning that day, it says that the parents alleged that this was a rape or something to that effect. So his file is not hiding that particular evidence. And looking to Leak, he does have this conversation with Jane Doe in the vehicle after the incident. And what he testified to is she reported semen on her shirt and that there was no force. His response, and I would add that Jane Doe testified that she agreed. She did not tell Leak there was force or that she was kidnapped. And what Officer Leak did in response to that right away is call a supervisor to look for some direction on how to handle what he had learned. And in the next 15 minutes, he talks to two detectives in the sexual assault unit, I should say detective and a sergeant, to get their input and counsel on what he ought to do. He's directed by the detective to do a miscellaneous incident report, which he does. He later adds a narrative to that report about 90 minutes later that specifically references the semen on the shirt, as well as the encounter that he had with, I believe her initials are JD, that came into his office earlier and said Ms. Doe is off campus and she may be in trouble. So when we look at all of the evidence here, and let me add two more things that I just forgot. With respect to Perkins, Ms. Doe's parents told him they would not participate in the board's investigation and that they did not want to know the Ms. Doe spoke with a Charlotte Mecklenburg police detective the evening of this incident and gave her story at that time. Okay, so with all of that evidence, there is no North Carolina case law that says officers who are documenting what they perceive to have happened, even if that's later proven to be incorrect as your honor pointed out. They're documenting what they perceive. They're getting input from their superiors. The victim themselves is an entirely different officer and that that victim is not cooperating or doesn't want to participate in a different investigation has somehow obstructed justice. To let the jury hear that evidence and find otherwise and to try to take little snippets out of context would be nothing more than speculation. Juries don't decide cases on speculation and in particular with the obstruction claim, there's no North Carolina case law that's been cited that's even close to these facts that would support a trial issue on this claim. The last thing I'd add on the obstruction claim, this court recognized in Evans versus Chalmers, a 2012 decision, that North Carolina has determined that law enforcement officers can't be liable for obstruction in their own investigations. The argument in the brief as to Leak has been that because he's a school official too, that wouldn't apply to him. But there is no legal authority for that proposition. He can be both a school official and a law enforcement officer and would still be entitled to immunities and liabilities of any other officer. I would argue to this court that that same rationale should apply to Perkins. I mean if he's if he's doing his own school investigation, it would be the same rationale. It's his investigation. There would be no support for the idea that he somehow obstructed that. If the court doesn't have any additional questions on obstruction, I can move to the other claims but I don't want to get ahead of myself. The next claims are state law claims for negligence and negligent infliction of emotional distress. Those claims are subject to North Carolina's public official immunity. So for those claims to get to a jury, what Ms. Doe would have to show is malice, corruption, or bad faith by either of the officials. Her brief, let me take a step back. I cited at this court Green versus Kearney, which is a North Carolina Court of Appeals decision that illustrates the kind of conduct the North Carolina courts are looking for to show public, to show malice, corruption, bad faith. In that case, he had a medical examiner that arrives on scene what he believes to be a fatal accident, ignores information from others on scene that there may be signs of life, directs a person to be placed in a body bag and in a refrigerator. Very bizarre and disturbing set of facts. About two and a half hours later, an officer comes to look at the body and they realize he's still alive. And what the North Carolina Court of Appeals said is that may be heightened negligence by the ME, but that is not malice, that's not corruption, that doesn't compromise his public official immunity. So that's the kind of standard that we would need to be looking at in this case. The sole argument that Ms. Doe advanced in her brief in one paragraph was that officers Leak and Assistant Principal Perkins acted in bad faith based on the factual discrepancy cited above. And when you look at the brief, those discrepancies seem to be what happened after the incident in the investigation. There's two problems with that. First off, I'm not going to repeat the arguments, there's nothing to suggest that in developing their own perceptions of what happened, documenting, giving her a chance to tell her story and otherwise, that they were acting malicious or corrupt. But second, that's a new argument. In her complaint, the allegations of negligence and infliction of emotional distress were centered on the idea that Officer Leak and Assistant Principal Perkins didn't do enough to prevent this incident in the first place. There was no allegation that they were negligent or they were negligent infliction of emotional distress based on how they investigated it afterwards. So if the brief is focused on their conduct afterwards, that's a new argument. Unless the court has any additional questions on the state law claim, I can move to a 1983 claim. Do you have a view whether, so the North Carolina Supreme Court has limited it to sort of three things outside the scope, malice and corruption. There's some lower court cases in the Court of Appeals of North Carolina that also adds the phrase bad faith. We have, at least the Fourth Circuit, doesn't seem to have ever applied to bad faith. We've sort of followed the North Carolina Supreme Court's formulation of this, which doesn't include bad faith as a separate ground. I mean, maybe acting with malice or corruption is bad faith, but the touchstone being those two. Do you have a view on whether under North Carolina law, which we're trying to apply here, bad faith is a standalone basis to get around public official immunity? That's a good question and I'm not sure I have a great answer for you today. I could see either sides of that argument, but I think it's an astute observation to say that at least North Carolina's highest court has not separately found some bad faith exception to public official immunity, which, as pointed out in the briefing, is the sole argument that's been advanced on this particular issue in this case. But there's no statement from a North Carolina appellate court that says there has to be evidence of malice, right? I did unless you have malice, you can't proceed. Is there? It seems to me it's a little bit broader in discussing the whole principle. Well, I want to make sure I'm answering your question, Judge Keenan, but what the courts have said is that there's public official immunity for governmental or discretionary duties undertaken by these officials. Unless they act with malice, corruption, the Court of Appeals has included bad faith, or official duty. So there needs to be some evidence that one of those categories, whether it be three or four, happened before. Why wouldn't bad faith be enough? I mean, it just seems to me that you're arguing the more extreme end of the continuum. Why wouldn't bad faith be enough? And then why are you saying there's no bad faith evidence in this record? Well, let me get to that question first, because what the record evidence has shown is that both Officer Leak as well as Assistant Principal Perkins documented their perceptions of what happened here, including many perceptions that are favorable to Ms. Doe's version of this incident. And there is no case law in North Carolina that says officers who are documenting what they see are asking for support and guidance from their superior officers and from specialized detectives that in taking that action they have somehow acted in bad faith. There's no support for that idea. The cases where the court has found bad faith are extreme. You've got examples of officers that are slamming people to the ground based on their own personal biases. So you're relying more than on the factual predicates for bad faith than you are on the generic concept of bad faith. I think that's correct. You're saying that's because the decision of a clearly established right cannot be made at a certain level of abstraction, it has to be rooted in the facts of the particular case. Is that a fair statement? Yes, yes. And moving to the 1983 claims, you know, this is an equal protection student on student harassment claim. And what would need to be proven would be discriminatory peer harassment as well as deliberate indifference and discriminatory intent by the school officials. The sole argument in the brief on this point is that no reasonable officer would have withheld information about Ms. Doe's appearance and her report that she was assaulted. We plow that ground, but she did not make that report to either Officer Leak or Assistant Principal Perkins. But that argument, a reasonableness standard is a negligence standard. That's not an argument that I have evidence of deliberate indifference or discriminatory intent by either of those officers. The case law that's been cited, by and large, it's Fourth Amendment cases, it's Fifth Amendment cases. I don't believe there was any 14th Amendment equal protection student on student cases that were cited in her brief for this proposition. But when we look at the second piece of qualified immunity, that's whether the right's clearly established. And that's where the Hurley case really is a very clean way to resolve this issue. In Hurley, the court said that a school official could be liable for deliberate indifference to student on student harassment. But what the court said is that that right was not clearly established in 2014 or 2015 when the events at issue in that case happened. Hurley was decided in 2018 and on that ground it affirms summary judgment for the officials. And that tracks dead-on with what's going on in this case. You've got November 3rd of 2015 allegations and the time period following, Hurley doesn't come out until 2018. So to the extent there would be any argument here, any evidence that would create a question about whether there was a constitutional violation by Officer Leak or Assistant Principal Perkins, that right would not have been clearly established at the time that this happened. Ms. Dunn cites to the Jennings case, why is that different? I believe the Jennings case dealt with sexual harassment that a student encountered at the hands of a university staff member. I think it was a soccer coach. It didn't deal with peer-on- peer sexual harassment. And that's the distinction that Hurley draws and says that that's a different kind of harassment. And so if school officials are going to be liable for their deliberate indifference, that right would be clearly established effective 2018 when Hurley was decided. If there are no other questions on this, I just want to hit on the discretionary rulings made by the trial court. The arguments, and I think some context here is probably helpful, there is more than two dozen motions in limine filed by the parties in this case. Court issued an order ruling on these motions, as happens when you're getting ready for a trial with the number of cases. A piece of the argument that she's making is that these evidentiary rulings were unreasoned. Typically in trials, most evidentiary rulings are unreasoned, maybe by virtue of necessity, but maybe just by virtue of practice. They're granted or denied or overruled as it might be. Have you seen any suggestion that that's required? I mean, it struck me, I hadn't thought about it until she mentioned it sort of directly, but we generally view evidentiary rulings, including 403 rulings, based on a single like overruled statement during the course of a trial. And the fact that it's unreasoned doesn't limit or prohibit us from conducting review. Have you seen suggestion that a court is required to provide that reasoning? No, and that was really the argument I was going to make, is that the question is, is there support in the record for the ruling? I mean, if her argument taken to its extreme would be that unless there is a particular analysis and rationale given for any trial court ruling that comes up, there's an argument that it's then arbitrary and would need to be overruled, and there's no support for that idea. Well, maybe there's no support, but we have said in other contexts, like take sentencing for example, where we have said like an unreasoned decision inhibits our review. I mean, maybe there's a distinction with evidentiary rulings and sentencing, I totally get, but we have said in some contexts that the failure to articulate reasons inhibits, you know, appellate court review. I think that's right, and I'm certainly no expert on anything in this world and not sentencing, but I would say that what the case law has by and large said about these kind of motions and limine is the question, is there record support for the outcome, for the court's exercise of its discretion? I'm not aware of any case law that would say in the context of, you know, starting with Leak's internal affairs history, that there are some factors or something to that effect that would need to be considered before a discretionary ruling could then be made. I think this is a straight 401, 402, and 403 analysis, and the argument really is it's arbitrary because there's no reasoning, but what there hasn't really been is an argument that it was an abusive discretion, and here is why. I mean, these were incidents that were remote in time, they were highly prejudicial, all of those arguments were advanced, the evidence was developed in the record, and there's no reason for the court to upset that discretionary ruling. I think with respect to the spoliation, you've got the same high-level framework, other than you're also looking at Rule 37e, which talks about a spoliation in the context of electronically stored information, that you would need a finding that the party acted with the intent to deprive of another party of the information's use in the litigation, and the information that was presented in this case from Assistant Principal Perkins is that he looked at videos, he flagged them thinking that was going to save them, but evidently he didn't understand how the system worked and it didn't, but the Charlotte Mecklenburg Police Department came in the day of this incident, reviewed videos, and pulled what they thought was relevant, and those were produced in this case. A total of five videos that have been produced. The other briefing, the reply, I think indicated that there were only two, perhaps, not five. That's not correct. There was five that were produced, and the testimony from Assistant Principal Perkins is that there were no cameras in the area where this incident allegedly happened, so the court heard all that evidence as to what happened to the videos, and evidence that the videos would not have captured the hand-grab and the pull off of campus in any event, and in its discretion decided not to give a spoliation inference. And again, there's nothing to support the idea that that was an abuse of discretion. I would add on that point that the argument at trial was that the spoliation inference would have been quote, highly relevant to the jury's consideration of misdose credibility with respect to her reports of being kidnapped, and that was in their memo of law that's D58-1 in support of that motion. Okay, well the jury found in her favor on sexual harassment. They didn't find in her favor on deliberate indifference. What was contained in this video would not get to deliberate indifference anyway, but that's not the argument that she raised. That's a new argument that's been raised on appeal. The last thing I want to do is just what I think is perhaps the easiest way to resolve this issue, because I'll confess I found it a little bit confusing in going through the briefing. Okay, if the idea here is that the magistrate erred in the recommendation because the recommendation didn't incorporate all the findings. Number one, there was no objection to the magistrate's recommendation by Jane Doe, and per Rule 72, you can assign error to a recommendation that you don't object to. Second, if the court looks at the joint appendix, pages 808 and 809, the party has settled the costs and fees sanction dispute and notified Judge Conrad that that issue had been settled. So without getting into any of the textual readings that she's advanced, to me that's the cleanest way to resolve that issue. I appreciate the court's time. I'd ask you to affirm the district court in all respects. Thank you. Ms. Dunn, you've got some time? Yes, Your Honor. May it please the court. The issue of how many videos were submitted by the Board of Education is easily resolved by looking at Joint Appendix Volume 5. There are only two videos from the school. Neither show the kidnapping, and yet the police have recorded that there was a He has not mentioned those videos are from a hospital. The question of which videos were spoliated are solely related to the school, and there were five videos identified by Assistant Principal Perkins as relevant from the school's showing that there was intentional efforts to preserve some but not others. So I can make sure I understand the argument. So your point is, yes there were five videos produced, but only two of them were at the school, three videos were from somewhere else. Yes. So in essence, y'all don't disagree. You're just, you're only two are pertinent to my argument. He's saying there's five, but like, I'm not sure why that difference matters here. I hate to put it this way, Your Honor, but I believe that the court is being misled. Assistant Principal Perkins has identified five videos from the school's cameras. Only two of them were preserved and provided in this case, and the other videos were not from the school at all. And so it is meant to confuse this court to misunderstand that wrong statement to make about counsel while you're standing here. That didn't at all come across to me when he described what just happened. I mean that that's a serious accusation to make. I understand, Your Honor. About your colleague. I understand, Your Honor, and I am still making it because there has been significant discovery misconduct that has occurred in this case repeatedly. Okay, but Ms. Dunn, I think you'd be helping your case more if you would focus here on what part of the record shows that Leakin Perkins intentionally withheld the false or provided false information. In other words, where is the intentional acts on their part? So the standard for summary judgment is whether there's a dispute of fact, and there is a dispute of fact. I believe the context from the statement of facts in our opening brief is necessary to understand this case. At 7 a.m. Ms. Doe was kidnapped by 720 Leakin Perkins received evidence. I understand, but I wouldn't start reading your statement of facts. But the reason I give this, Your Honor, is because this is the context of why there is intent to withheld evidence. Because there was liability from Leakin Perkins sitting around for over half an hour when they could have prevented the rape of a minor student. So they had the intent. This is a factual dispute. This court should deny summary judgment because of this factual dispute and not apply the public official immunity. Looking at Doe v. City of Charlotte, where a North Carolina appellate court likewise denied malice over time. Thank you.
judges: Julius N. Richardson, Barbara Milano Keenan, Elizabeth Kay Dillon